IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANDREA C. WEATHERS )
 )
    Plaintiff, )
 )
    v. ) 1:08CV847
 )
UNIVERSITY OF NORTH CAROLINA )
AT CHAPEL HILL, HERBERT B. )
PETERSON, JONATHAN KOTCH, )
BARBARA K. RIMER, EDWARD M. )
FOSTER, SANDRA L. MARTIN )
 )
    Defendants. )

**MEMORANDUM OPINION AND ORDER**

OSTEEN, JR., DISTRICT JUDGE

    On November 23, 2008, Plaintiff filed a verified complaint naming as defendants the University of North Carolina at Chapel Hill, Herbert B. Peterson, Jonathan Kotch, and Barbara K. Rimer. Plaintiff moved for a temporary restraining order and a preliminary injunction pursuant to Rule 65, Fed. R. Civ. P. (Docs. 8, 9) seeking to prevent Defendants from ending her employment as a result of their refusal to reappoint her or grant tenure. This court held a hearing to consider Plaintiff's motions on November 28, 2008. At the hearing Plaintiff notified the court of her intention to amend her pleading as a matter of right to include additional defendants in their official and individual capacities and additional causes of action, including

claims under Title VII and 42 U.S.C. § 1983. The hearing was continued to December 2, 2008. On December 1, 2008, Plaintiff filed her amended complaint. (Doc. 17.) The court heard additional arguments from the parties on December 2, 2008. For the reasons set forth herein, Plaintiff's motions for a temporary restraining order and a preliminary injunction (Docs. 8, 9) are denied.

**I.   Facts**

In December 2001, Dr. Andrea C. Weathers (hereinafter "Dr. Weathers" or "Plaintiff"), an African-American female, began her employment with Defendant University of North Carolina at Chapel Hill (hereinafter "UNC" or "University"), as an assistant professor on the tenure track in the Department of Maternal and Child Health (hereinafter the "Department") in the School of Public Health. (Compl. ¶ ¶ 10, 24.) Dr. Weathers is the only African-American junior faculty member on the tenure track in the Department. (Compl. ¶ 63.) Dr. Weathers alleges that Jonathan Kotch, the Department Interim Chair, and other non-African-American senior faculty members within the Department, created an environment in which she was professionally and socially excluded because of her race (Compl. ¶ 64), in violation 42 U.S.C. § § 1981, 1983 and 2000e *et. seq.* (Title VII of the Civil Rights Act of 1964), and the due process and equal protection clauses under the Fourteenth Amendment to the United States Constitution and

Article One of the North Carolina Constitution (Am. Compl. at 1-2, 38-39). Dr. Weathers alleges that as a result of this racially motivated conduct, she was denied reappointment and tenure. (Id.)

On or about November 19, 2007, UNC, through Dr. Herbert B. Peterson (hereinafter "Dr. Peterson") (Dr. Weathers's immediate supervisor and a defendant in this case), notified Dr. Weathers in writing of his recommendation and UNC's decision to deny her reappointment and promotion to a tenured professor position in the Department.[1] (Compl. ¶ ¶ 12, 60; Weathers Aff. Ex. B.) The letter stated that Dr. Weathers's employment term would end on November 30, 2008. (Compl. ¶ 60; Weathers Aff. Ex. B.) It also stated that the basis for Dr. Peterson's decision was the following: (1) Dr. Weathers did not submit her reappointment/promotion package to the Department by the May 1, 2007 deadline, and (2) Dr. Weathers's performance was not considered commensurate with the standards of the Department and School of Public Health, notably, because the number of her peer-reviewed publications was below that expected for the conferral of tenure. (Id.) Shortly after receiving notification of UNC's adverse employment decision, Dr. Weathers began appealing the

---

[1] Dr. Peterson had recommended Dr. Weathers for reappointment in 2004, despite concerns voiced by the full professors at the time over Dr. Weathers's lack of publications. (Peterson Aff. ¶ 4.)

3

decision through administrative channels at UNC; that process continues but has not been completed. (Compl. ¶ 68-69.)

Also in 2007, after Dr. Weathers's deadline for submission of her tenure materials, UNC received funding for a federal grant from the National Institutes of Health (hereinafter "NIH") entitled Migration and Access to Care: An Innovative Population-Based Sampling Strategy. (Compl. ¶ ¶ 5, 70; Gallagher Aff. ¶ 3; Rimer Aff. ¶ 18.)[2] UNC is designated as the grantee of the grant. UNC and NIH became parties to this grant whereby the NIH provides funding for UNC's research. (Gallagher Aff. ¶ 3.) Under the UNC-NIH grant, UNC must notify NIH if the principal investigator (i.e., the primary project administrator or researcher) on the grant reduces her time working on the project by more than twenty-five percent, is absent from the project for more than three continuous months, or leaves the project. (Id. at ¶ ¶ 2, 4.) UNC may then choose to return the grant to NIH, work with NIH to designate a substitute principal investigator at UNC, or release the grant to another qualifying institution. (Id. at ¶ 4.) To hold the position of principal investigator on the UNC-NIH project, the designated person must hold a faculty or scholar position at an academic or research organization.

---

[2] Although it is not entirely clear from the affidavits, Plaintiff's counsel advised the court that the NIH grant was not funded until February 2008. This court notes that Plaintiff, in her curriculum vitae, alleges that the grant dates are "12/1/07 - 11/30/09." (Weathers Aff. Ex. A.) Based on that evidence, this court holds that the grant was not awarded until 12/1/07, after Plaintiff was denied reappointment or tenure.

4

(Weathers Aff. ¶ 31; Blum Aff. ¶ 7.) Dr. Weathers was designated as the principal investigator on the UNC-NIH project, as she was the individual responsible for procuring the grant on behalf of UNC. (Compl. ¶ ¶ 5, 70.)

On September 9, 2008, UNC advised Dr. Weathers that it was willing to release the NIH grant to another qualifying institution of higher education so that she could possibly continue her work on the project as principal investigator after her termination. (Id. at ¶ 5; Compl. ¶ ¶ 7, 71.) To this end, UNC told Dr. Weathers that it would delay informing NIH of her separation from the University until thirty days after her last day of employment, November 30, 2008, in order to allow her time to attempt to coordinate the transfer of the NIH grant to another institution. (Gallagher Aff. ¶ 3.) Since being advised of her non-reappointment, Dr. Weathers has been unable to obtain a tenure track professor position at another institution, but she has been successful in locating an unpaid "visiting scholar" position at Johns Hopkins University that might allow her to continue work on the NIH project through John Hopkins. (Am. Compl. ¶ 5., Blum Aff. ¶ 7.)

## II. The Legal Standard

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." MicroStrategy,

5

Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991)). In the Fourth Circuit, courts employ the "balance-of-hardships test" in determining whether to issue temporary injunctive relief. Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 193, 196 (4th Cir. 1977). Under the balance-of-hardships test, courts generally consider several factors, including: (1) the likelihood of irreparable harm to the plaintiff if injunctive relief is denied; (2) the likelihood of harm to the defendants if the order is granted; (3) the likelihood that the plaintiff will prevail on the merits; and (4) the degree to which the public interest is served by issuance of injunctive relief. Id. at 197. "[T]he plaintiff bears the burden of establishing that each of these factors supports granting the injunction." Direx Isreal, 952 F.2d at 812 (quoting Technical Publ'g Co. v. Lebhar-Friedman, Inc., 729 F.2d 1136, 1139 (7th Cir. 1984) (internal brackets omitted)).

Pursuant to the balance-of-hardships test, the plaintiff must first make a clear showing of actual and immediate irreparable harm. Direx Isreal, 952 F.2d at 812.[3] "If[, and only if,] the plaintiff has made a 'clear showing' of irreparable injury absent injunctive relief, the court must next balance the likelihood of irreparable harm to the plaintiff if an injunction

---

[3] "The 'balance of the hardship' test does not negate the requirement that the [movant] show some irreparable harm." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 360 (4th Cir. 1991).

is not issued against the likelihood of irreparable harm to the defendant if an injunction is issued." Northgate Assocs. LLLP v. NY Credit Funding I, LLC, No. 1:08-cv-420, 2008 U.S. Dist. LEXIS 59065, at *18 (M.D.N.C. Aug. 8, 2008). "[I]f a decided imbalance of hardship should appear in plaintiff's favor, then the likelihood-of-success [factor] is displaced . . . ." Blackwelder, 550 F.2d at 195. Temporary injunctive relief then will be granted if "the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus more deliberate investigation." Id. (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953)). "But if the plight of the defendant [is] not substantially different from that of the plaintiffs,' [sic] that is, if there is no imbalance of hardship in favor of the plaintiff, then the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of likelihood of success." MicroStrategy, 245 F.3d at 339 (quoting Direx Israel, 952 F.2d at 808 (quotation marks omitted)).[4]

### III. Discussion

Dr. Weathers contends that evaluation of the balance-of-hardships test supports her entitlement to temporary injunctive

---

[4] "The importance of probability of success increases as the probability of irreparable injury diminishes." Blackwelder, 550 F.2d at 195.

7

relief. (Pl.'s Br. in Support of Mot. TRO and Prelim. Inj. at 6.) Specifically, she argues that failure to renew her employment or grant her tenure, and her inability to continue her research or transfer the NIH grant to another institution, constitutes irreparable harm. Dr. Weathers argues that without issuance of injunctive relief, she will lose her status as principal investigator on the NIH grant and as a result her reputation (and employability) as a researcher will be damaged by her failure to successfully complete the project. After careful consideration of the evidence presented, the court finds that Dr. Weathers has failed to meet her burden of establishing that she will suffer at least some quantum of irreparable harm absent temporary injunctive relief.

First, Dr. Weathers's potential loss of earnings (i.e., damage to her employability) does not constitute irreparable harm.

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against [Plaintiff's] claim of irreparable injury.

Sampson v. Murray, 415 U.S. 61, 90 (1974) (quoting Virginia Petroleum Jobbers Assn. v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958)) (emphasis omitted). Dr. Weathers's complaint includes

8

claims for money damages under 42 U.S.C. § 1983 against several UNC faculty members in their individual capacities. (Am. Compl. ¶ 101.) If Dr. Weathers ultimately prevails on the merits, she may be awarded damages for her lost earnings and possibly reinstated to her faculty position and conferred tenure. See Stolberg v. Members of Bd. of Trs., 474 F.2d 485 (2d Cir. 1973) (district court awarded lost wages and ordered reinstatement of professor with tenure in 42 U.S.C. § 1983 action). Furthermore, Dr. Weathers's lost income is appropriate relief under Title VII as well. Thus, any temporary loss of earnings Dr. Weathers might suffer is not irreparable.

Second, the damage that Dr. Weathers might suffer to her reputation as a result of not being able to complete the UNC-NIH project does not constitute irreparable harm. The Fourth Circuit has decidedly rejected the argument that a University's decision not to confer tenure on a faculty member damages that faculty member's reputation.

> It is a fact of basic importance that non-renewal, following the running of the established probationary period, is not a dismissal, and is altogether lacking in invidious connotations. There are numerous factors apart from the probationer's level of competence entering into the decision whether to confer tenure- the sin qua non for remaining in a university's employ after expiration of the probationary period. *It is not a criticism to be denied tenure.*

Mayberry v. Dees, 663 F.2d 502, 515 (4th Cir. 1981) (emphasis added). From Mayberry, it appears to follow that a University's

9

denial of tenure, and the attendant discontinuation of a faculty member's research as a result of that decision, "is not a criticism" of the faculty member and does not adversely reflect on her abilities so as to damage her reputation. See id.[5]

Further, the court notes that there is evidence that Dr. Weathers may continue her work as principal investigator on the UNC-NIH project if she wishes. Dr. Weathers submitted the affidavit of Dr. Robert Blum, Director of the Johns Hopkins Urban Health Institute, which indicates that Johns Hopkins University (hereinafter "JHU") may be able to offer Dr. Weathers a visiting scholar position that would allow her to continue her work on the NIH grant and transfer the grant to JHU. Although this position would be unpaid, as stated, any lost wages Dr. Weathers might incur is not a proper basis for finding that she has suffered irreparable harm. Additionally, Dr. Weathers has not offered any specific evidence that she made any effort to further pursue the visiting scholar opportunity available to her at JHU or any other unpaid scholar positions at other qualified institutions. In equity, one cannot complain of irreparable harm that they can

---

[5] In other words, UNC's denial of tenure to Dr. Weathers, and the consequent fact that Dr. Weathers may not be able to continue her work on the UNC-NIH project, does not unfavorably reflect on Dr. Weathers's ability to manage grants so as to damage her reputation.
    The court also notes that case law suggests that temporary damage to an employee's reputation generally does not constitute irreparable harm. See Guerra v. Scruggs, 942 F.2d 270, 274-75 (4th Cir. 1991) (in the military employment context, the Fourth Circuit held that where the only harm the plaintiff can suffer is damage to his reputation during the interim between his discharge and an administrative review of his discharge classification determination, such harm does not cause irreparable injury).

themselves readily remedy. See Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 244-45 (1933) (noting that "[t]he governing principle [of the unclean hands doctrine] is that whenever a party who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him . . . .") (citation and internal quotation marks omitted).

Finally, notwithstanding Mayberry, the court finds that Dr. Weathers lacks a sufficient interest in the NIH grant upon which to predicate her claim that she will suffer irreparable harm to her reputation absent injunctive relief. The court notes that the grant at issue involves a relationship between UNC and NIH, not Dr. Weathers and NIH. Dr. Weathers has not presented any evidence that even remotely suggests that she has any cognizable interest or expectancy in the NIH grant. Under the UNC-NIH contract, UNC has the power to remove Dr. Weathers as principal investigator on the project and possibly retain the grant. (Gallagher Aff. ¶ 4.)[6] Further, when Dr. Weathers accepted the principal investigator designation on the UNC-NIH project, she

---

[6] Further, at the temporary injunction hearing on November 28, 2008, Dr. Weathers, through her lawyer, acknowledged that the research she performed on the NIH project did not belong to her. She stated that the work belonged to NIH. UNC, on the other hand, contended that Dr. Weathers's work belonged to the University. Either way, it is clear from the proffers of the parties that the forecast of the evidence in this case reveals that Dr. Weathers does not have a cognizable interest in the work she performed in furtherance of the NIH grant, let alone any interest in the grant itself.

11

knew that her employment relationship with UNC would be discontinued; she should have been aware of the risk that her work on the grant could be interrupted in the event she was no longer able to serve as principal investigator on the project.[7]

Even assuming, *arguendo*, that Dr. Weathers presented some evidence of irreparable harm, the court finds that "a decided imbalance of hardship [certainly does not] appear in [P]laintiff's favor" and "the [P]laintiff has [not] raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus more deliberate investigation." See Blackwelder, 550 F.2d at 195. The court finds that, from the evidence presently available, Dr. Weathers is not likely to prevail on the merits nor has she raised a substantial question; thus issuance of injunctive relief in her favor is unwarranted.[8]

First, with regard to Dr. Weathers's Title VII and 42 U.S.C. § 1983 claims, it appears that Dr. Weathers will not be able to establish her prima facie case as required by the Supreme Court's decisions in Tex. Dept. of Comty. Affairs v. Burdine, 450 U.S.

---

[7] Equity also supports rejection of Dr. Weathers's argument that absent an injunction, she is irreparably harmed in that she cannot transfer the UNC-NIH grant to another institution. It would be inequitable to "punish" UNC, by enjoining it from discontinuing its employer-employee relationship with Dr. Weathers, for gratuitously bestowing a benefit on Dr. Weathers (i.e., allowing Dr. Weathers to take the NIH grant with her to another institution) when it is under no apparent obligation to do so.

[8] Several times throughout oral argument, without prompting from the court or opposing counsel, Plaintiff's counsel stated that this would be a difficult case to prove.

12

248, 253 (1981) and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[9] In review of the affidavits, Dr. Weathers has little, if any, evidence that she was qualified for reappointment or promotion to a tenure position. Moreover, even if she is able to prove that she was qualified in accordance with Burdine and McDonnell Douglas, the evidence suggests that UNC will be able to offer formidable evidence that its decision to not reappoint or grant Dr. Weathers tenure was not motivated by racial animus.

Dr. Peterson made the decision to recommend that Dr. Weathers not be conferred tenure because Dr. Weathers did not submit her application in a timely manner and her research productivity did not meet the Department's standards. (Peterson Aff. ¶ 23-25.) The court notes that the evidence submitted by UNC corroborates Dr. Peterson's proffered bases for not recommending Dr. Weathers, particularly as to research productivity. Barbara K. Rimer, Dean of the School of Public Health, testified that, with regard to "those junior faculty members who were promoted and tenured during the period from 9/1/99 to 12/1/07[,]" "[t]he faculty member with the lowest number of peer-reviewed manuscripts, 12, was also Principal Investigator on 12 grants." (Rimer Aff. ¶ ¶ 15-16) (emphasis added.) "At the time she was being considered for promotion and

---

[9] Case law holds that the legal standards for evaluating claims of discrimination are the same under both Title VII and 42 U.S.C. § 1983. Causey v. Balog, 162 F.3d 795 (4th Cir. 1998). Dr. Weathers acknowledges that she is proceeding under the McDonnell Douglas standard.

13

tenure, Dr. Weathers had produced a total of 6 published papers during her 6 years at the school." (Id.) Dr. Weathers has offered no evidence that contradicts Dean Rimer's statements. Dr. Weathers did offer evidence that she published several articles in academic journals while employed by UNC (Weathers Aff. Ex. A), but she has not offered evidence of her credentials as compared to employees to whom UNC has conferred tenure, or even reappointed, after six years of employment.

Further, although the parties dispute whether Dr. Weathers met preliminary deadlines for submitting individual components of her application, it is clear from electronic mail correspondence between Dr. Weathers and several persons within the department that, despite UNC's informing Dr. Weathers of the applicable deadlines and repeatedly requesting her to submit components of her application, Dr. Weathers did not submit her complete application by May 1, 2007, as required by University policy. (Peterson Aff. ¶¶ 14-15, Exs. A, B; Cotcamp Aff.)

Additionally, several UNC employees have testified that they made great effort to support the furtherance of Dr. Weathers's career. (Id. at ¶ 5; Earp Aff. ¶ 8; Margolis Aff.; Kotch Aff. ¶ 3.) These employees further testified that they disassociated themselves with Dr. Weathers because of Dr. Weathers's unprofessional or discourteous conduct, not because of her race. (Farel Aff.; Margolis Aff., Ex. A.) An individual has no right,

14

under federal or state law, to be protected from termination on account of their unprofessional or unfriendly conduct.[10]

Third, with regard to Dr. Weathers's civil rights claims against UNC (a state entity) and the named defendants in their official capacities, Dr. Weathers has neither offered evidence nor argument as to how she might be able to prevail on her claims in light of Eleventh Amendment's grant of immunity to defendants in such suits. See Huang v. Bd. of Governors of the Univ. of N.C., 902 F.2d 1134, 1138-39 (4th Cir. 1990) (noting, in a case involving causes of action against UNC, that "it is well settled that the Eleventh Amendment bars a suit by private parties to recover money damages from the state or its alter egos acting in their official capacities . . . ." and "the Eleventh Amendment bars pendent state money damage claims as well as the § 1981 and § 1983 damage claims") (emphasis omitted).

Fourth, Dr. Weathers has not carried her burden of proving that she is likely to prevail on her claim that the defendants violated her due process rights under the United States and North

---

[10] Dr. Weathers alleges an environment of hostility and exclusion that was due to her race. While Dr. Weathers has described in her affidavit certain sporadic racially-based statements made by several defendants over the six years of her employment, her allegations about hostility, exclusion and race in her work environment are generally conclusory and subjective. UNC and the named defendants have presented affidavits which paint a very different picture as to their interactions with Plaintiff, and have included numerous specific facts in support of their response to Dr. Weathers's allegations. Without resolving credibility issues on the record before the court, it appears from some of the presently uncontested facts (e.g., Dr. Weathers's refusal to work with student advisees, her refusal to participate in some teaching opportunities, and her electronic mail communications with other employees) that, at best, Dr. Weathers will have a heavy burden to prove that race, as opposed to other factors, was a motivating factor in her relationship with senior faculty and her failure to receive reappointment or tenure.

15

Carolina Constitutions. Although paragraph one of her Amended Complaint and the caption to Count Three of her Amended Complaint state that Dr. Weathers asserts violation of her due process rights, Dr. Weathers's Amended Complaint does not allege how said violations occurred. Further, there is nothing in the evidence to suggest that Dr. Weathers's due process rights were violated. Dr. Weathers has availed herself of numerous administrative remedies at the University. Additionally, probationary faculty members do not have expectations of (or interests in) continued employment beyond the date their employment contracts are set to expire. See <u>Kilcoyne v. Morgan</u>, 664 F.2d 940, 942 ("Because he lacked a right to further employment at [the University], his denial of tenure and further employment *without any procedural safeguards would have been permissible under the Fourteenth Amendment*")(emphasis added); (Am. Compl. ¶ 70-71.)

## IV. Conclusion

For the reasons set forth above, Plaintiff's motions for temporary restraining order and a preliminary injunction (Docs. 8 and 9) are DENIED.

This the 4th day of December 2008.

William L. Osteen, Jr.
United States District Judge

16